IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BELCHER-ROBINSON, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:09-cv-131-MEF |
| | ) | |
| LINAMAR CORPORATION, *et al.*, | ) | (WO) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This dispute between a tier-two and a tier-three supplier in the General Motors supply
chain arose from an agreement between the two for manufacture and delivery of malleable
iron valve housings.  The plaintiff-supplier, Belcher-Robinson, L.L.C. ("Belcher-Robinson"),
claims it manufactured and delivered the valve housings in accordance with an agreement
between it and defendants-buyers but was not paid for some of those valve housings.
Defendants claim they satisfied their obligations under the agreement between the parties and
suffered damages of their own owing to the seizure and closing of Belcher-Robinson's plant
by creditors.  They have not filed a counterclaim.

The case is presently before the Court on a motion to dismiss for improper venue,
which defendant Linamar Holdings, Inc., doing business as Roctel Manufacturing, ("Roctel")
filed on July 14, 2009.  (Doc. #22).  Roctel argues by this motion that a forum-selection
clause is binding on the parties and requires that this litigation take place in the courts of

Ontario, Canada.  Alternately, Roctel argues that the court should dismiss this case pursuant to the doctrine of forum non conveniens.  After careful consideration of the motion, Belcher-Robinson's response, Roctel's reply, evidence submitted by both parties, and the applicable authorities, the Court finds that the Motion is due to be DENIED.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.  Defendants have not argued that the Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(a).  Roctel argues, however, that this case should be dismissed for improper venue because of a forum-selection clause that it contends governs the forum and choice of law applicable to this dispute.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts in the Complaint

According to the allegations in the complaint, this case arises from a dispute between Belcher-Robinson, a Delaware limited liability company with its principal place of business in Tallapoosa County, Alabama, and defendants Linamar Corporation ("Linamar"), a Canadian corporation doing business in the State of Alabama; Roctel, a Canadian corporation doing business in the State of Alabama; Linamar de Mexico S.A. de C.V., a Mexican corporation doing business in the State of Alabama; and five fictitious defendants.

Between January 1, 2007 and September 30, 2008, Belcher-Robinson manufactured

malleable iron stator shafts which Linamar and Roctel ordered.  Belcher-Robinson delivered

the shafts to Linamar and Roctel, but the defendants failed to pay for them as agreed.

Plaintiff seeks $350,000.00 plus interest and costs for these "goods sold and

delivered," which is the style of Count I.  Count II of the Complaint contains no additional

factual allegations but instead appears to present an alternative legal theory.  By Count II,

Plaintiff seeks $350,000.00 "due by open account."

### B. Defendant's Evidence

Roctel submitted with its motion to dismiss several exhibits. Principal among them

is a purchase order.  Roctel claims that the terms of this purchase order govern this dispute

between the parties.  This "Blanket Purchasing Agreement," blanket order number fifty-five

("purchase order 55"), dated November 28, 2005, states that all shipping documentation

should reference "PO# 22533," and was signed by Mario Martini, an employee of Roctel.

The location on the purchase order specified for "Supplier Acknowledgment" is blank, as is

the associated place for the date of any such acknowledgment.

The second page of the purchase order is headlined "Terms and Conditions" and

contains a full page of small-font boilerplate.  The final term and condition ("paragraph 25")

governs choice of law and jurisdiction:

> **25. CHOICE OF LAW AND JURISDICTION**: The Buyer and Seller Agree
> that the courts of Ontario shall have jurisdiction for all purposes.  The
> International Sales of Goods Act shall not apply.

There were various revisions to purchase order 55 over the course of dealing between

the parties.  According to Roctel, the final one was Revision 6, which is included as Exhibit

5.  That version of purchase order 55 is substantially similar to the initial order, though it

states its end date as December 31, 2010, and differs in small ways with respect to several

of its terms.  It again contains the language "Reference PO# 22533" on all shipping

documentation, and lacks a "Supplier Acknowledgment."  Paragraph 25 is the same as

quoted above, but there is an additional page of raw materials terms and conditions, which

don't appear to bear on the current dispute.

Roctel also submitted a reply to the Plaintiff's response.  Included in the attached

evidentiary materials are six invoices from Belcher-Robinson that reference "Purchase Order:

22533-Blank 55."  Roctel also includes two Belcher-Robinson packing lists that reference

"Purchase Order: 22533-Blank 55."

### C. Plaintiff's Evidence

Belcher-Robinson submitted evidentiary material with its response to the Roctel's

motion to dismiss.  Among these materials is an affidavit by Richard Porter, who was

president of Belcher-Robinson at all relevant times.  He states in the affidavit that Belcher-

Robinson did not "agree, consent, [or] acquiesce to any terms of an agreement . . . that

contractually bound Belcher-Robinson LLC to Roctel's unilaterally stated terms of

agreement as set out in" purchase order 55.  Furthermore, he claims that Belcher-Robinson

"refuted all standard terms . . . and communicated this lack of consent or intent to be bound

to Roctel and Linamar employees including Mario Martini."  Finally, he states that "Belcher-

Robinson, LLC did not enter into any forum-selection agreement."

### D. Procedural History

Belcher-Robinson filed this civil action on December 29, 2008, in the Circuit Court of Tallapoosa County, Alabama (Doc. # 5-2).  Defendant Linamar removed the case to this Court on February 20, 2009 (Doc. # 5), and answered the complaint three days later (Doc. # 2).  Plaintiff amended the complaint with leave of the Court on April 8, 2009 (Doc. # 13).  Defendant Roctel filed a motion to dismiss in lieu of a responsive pleading on July 14, 2009, (Doc. # 22), following international service of process.  Belcher-Robinson, upon order of the Court, filed a response in opposition to the motion to dismiss (Doc. # 25), and Roctel filed a reply (Doc. # 26).  Evidentiary exhibits accompanied the motion to dismiss and both subsequent briefs.  The motion to dismiss is therefore under submission and ripe for disposition.

### IV. DISCUSSION

Roctel's extensive briefing in support of its motion to dismiss contains two principal arguments.  First, Roctel argues that the forum-selection clause in its purchase order 55 binds the parties to this action and requires dismissal of the claims against Roctel.  Second, as a backstop argument, Roctel argues that the doctrine of forum non conveniens suggests dismissal of the claims against Roctel.  Belcher-Robinson of course disagrees on both counts and argues that the forum-selection clause is unenforceable, or at worst permissive, and that forum non conveniens presents no challenge to the case continuing in this district.  For the

reasons set forth below, the Court finds that, under the applicable legal standard, Belcher-

Robinson is not bound by the forum-selection clause in purchase order 55 and that forum non

conveniens does not compel dismissal of the claims against Roctel.  Therefore, the motion

to dismiss is due to be denied.

### A. Forum-selection Clause

### 1.  Legal Standard

In the Eleventh Circuit, a motion to dismiss on the basis of a forum-selection clause

is brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to

dismiss for improper venue.  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285,

1290 (11th Cir. 1998).

"A judge may make factual findings necessary to resolve motions to dismiss for . . .

improper venue," so long as the resolution of the factual disputes is not an adjudication on

the merits of a case.  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (citing *Murphy*

*v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139–40 (9th Cir. 2004)).  Thus, in the context of a

Rule 12(b)(3) motion to dismiss for improper venue "the court may consider matters outside

the pleadings such as affidavit testimony, particularly when the motion is predicated upon

key issues of fact."  *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)

(internal quotation marks omitted).

When venue is challenged by a Rule 12(b)(3) motion, the plaintiff has the burden of

showing that venue in the forum is proper.  *Id.*; *Interlease Aviation Investors II (Aloha)*

*L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003); *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001). A court "must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Wai*, 315 F. Supp. 2d at 1268. A court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*; *Hodgdon Powder Co., Inc. v. Clean Shot Techs., Inc.*, 92 F. Supp. 2d 1170, 1171–72 (D. Kan. 2000); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990) (holding that courts should apply the summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction or a related type of motion, including ones for improper venue). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)).

**2. Analysis**

The United States Supreme Court has established two separate standards for considering the impact of forum-selection clauses on venue. In *M/S Bremen v. Zapata Off-Shore Co.* the Court altered the "traditional view of many American courts" that forum-selection clauses removing a case from American courts are against public policy and unenforceable. 407 U.S. 1, 6 (1972). The Court determined instead that "such clauses are

prima facie valid and should be enforced unless enforcement is shown by the resisting party

to be unreasonable under the circumstances." *Id.* at 10 (inner quotations omitted). The Court

listed "fraud, undue influence, or overweening bargaining power" as conditions that might

make enforcement of a forum-selection clause unreasonable. *Id.* at 12.

The Supreme Court in *Zapata* said its given standard "is the correct doctrine to be

followed by federal district courts *sitting in admiralty*." *Zapata*, 407 U.S. at 10 (emphasis

added). However, some lower courts applied *Zapata* to forum-selection clauses generally.

*See, e.g.*, In re *Fireman's Fund Ins. Cos.*, 588 F.2d 93, 95 (5th Cir. 1979) (applying *Zapata*

to a transfer under 28 U.S.C. § 1404(a)).[1]

The Supreme Court made clear in a later case that the *Zapata* standard did not govern

all considerations of forum-selection clauses. In *Stewart Organization, Inc. v. Ricoh Corp.*,

the Court considered "whether a federal court *sitting in diversity* should apply state or federal

law in adjudicating a motion to transfer a case to a venue provided in a contractual forum-

selection clause." 487 U.S. 22, 24 (1988) (emphasis added). After noting that the Eleventh

Circuit "applied the standards articulated in the *admiralty* case of" *Zapata*, the Supreme

Court "affirm[ed] under somewhat different reasoning." *Id.* at 25 (emphasis added). The

Court found that "the first question for consideration should have been whether [28 U.S.C.]

§ 1404(a) itself controls respondent's request to give effect to the parties' contractual choice

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

of venue." *Id.* at 29.  The Court went on to say that a forum-selection clause "will be a

significant factor that figures centrally" in a court's consideration of a motion to transfer

under § 1404(a). *Id. See also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 3803.1, at 79 (3d ed. 2007) ("The combined rule of these cases is that a

federal court sitting in admiralty jurisdiction should apply a forum-selection clause if it is

'reasonable,' but a federal court sitting in diversity or federal question jurisdiction should

take the clause into account only as one element in the balancing test required by Section

1404(a).").

    None of these cases specify the standard for considering a forum-selection clause in

this instance, a non-admiralty case where the named venue in the forum-selection clause is

in another country.  Defendants asserted only diversity jurisdiction in removing this case

from state court.  And though this court is sitting in diversity, the standard in *Ricoh Corp.*

cannot apply because Roctel is not moving for a transfer to another venue within the United

States.  *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any district or division

where it might have been brought.").  The best solution would be to use the *Zapata* standard

in these types of cases.

    The Eleventh Circuit said as much in *Lipcon v. Underwriters at Lloyd's, London*.  148

F.3d 1285 (11th Cir. 1998).  Though dealing largely with federal securities law, the Eleventh

Circuit in *Lipcon* applied *Zapata* to a forum-selection clause on the premise that it was the

proper standard for "international agreements."  *See, e.g.*, *id.* at 1292.  The *Lipcon* Court

approvingly noted the Supreme Court's statement that "[w]e cannot have trade and

commerce in world markets . . . exclusively on our terms, governed by our laws, and resolved

in our courts," especially given "present-day commercial realities and expanding

international trade."  *Id.* at 1294 (quoting *Zapata*, 407 U.S. at 9, 15).  Given the Supreme

Court's concern in *Zapata* with issues of predictability and comity in international commerce,

*id.*, it makes sense to apply *Zapata* and its progeny to forum-selection clauses in international

agreements, even in the absence of admiralty jurisdiction.[2]

However, the *Zapata* standard only comes into play if the forum-selection clause can

properly be deemed part of the contract between the parties at this stage in the litigation.  The

parties in this case are all located in contracting states of the United Nations Convention on

Contracts for the International Sale of Goods ("CISG").[3]  Therefore, the CISG governs this

dispute.  CISG, art. 1(1)(a), Dec. 11, 1986, *reprinted at* 52 Fed. Reg. 6262 (Mar. 2, 1987)

("This Convention applies to contracts of sale of goods between parties whose places of

business are in different States when the States are Contracting States."); *see also, e.g.*,

---

[2] This conclusion is strengthened in this case because the standard in *Ricoh Corp.*, premised on the application of 28 U.S.C. § 1404, would not be applicable, as the venue named in the forum-selection clause is not a United States judicial district.

[3] The United States Senate ratified the CISG in 1986, and it came into effect between the United States and the other contracting states in 1988.  *MCC-Marble Ceramic Ctr., Inc. v. Ceramica Nuova D'Agostino, S.P.A.*, 144 F.3d 1384, 1386 n.5 (11th Cir. 1998).  Canada became a contracting state on May 1, 1992.  International Sale of Goods Contracts Convention Act, 1991 S.C., ch. 13 (Can.).

*Treibacher Industrie, A.G. v. Allegheny Techs., Inc.*, 464 F.3d 1235, 1238 n.5 (11th Cir.

2006); *MCC-Marble Ceramic Ctr., Inc. v. Ceramica Nuova D'Agostino, S.P.A.*, 144 F.3d

1384, 1386 (11th Cir. 1998).  Furthermore, the CISG governs the formation of this contract

of sale.  CISG, art. 4; *see also id.*, art. 100(1) ("This Convention applies to the formation of

a contract only when the proposal for concluding the contract is made on or after the date

when the Convention enters into force in respect of the Contracting States.").  Therefore, the

CISG must be applied, using the standard for a Rule 12(b)(3) motion to dismiss for improper

venue, to determine if the parties formed a contract that included the forum-selection clause.[4]

The resolution of the motion to dismiss turns largely on the fact-finding standards

applicable to motions to dismiss for improper venue.  Applying these standards to the case

at bar, the Court finds that Belcher-Robinson is not bound by paragraph 25 of purchase order

55—neither the forum-selection clause nor the exclusion of the CISG—because paragraph

25 is not part of a contract between the parties.  The Court stresses that this conclusion is not

an adjudication on the merits of this question—at a later stage, the evidence might show that

---

[4] Paragraph 25 of purchase order 55 contains both the forum-selection clause and a clause
excluding the CISG.  Therefore, if the parties formed a contract that included that provision, the
CISG would not apply.  However, given that this is an agreement between contracting states to
the CISG, the CISG is applicable to determine if the parties did form that contract which
excluded the CISG.  *See Zhejiang Shaoxing Yongli Printing & Dyeing Co., Ltd. v. Microflock
Textile Group Corp.*, No. 06-22608-CIV, 2008 WL 2098062, at *2 (S.D. Fla. May 19, 2008)
("The CISG *automatically* applies to international sales contracts between parties from different
contracting states unless the parties *agree* to exclude the application of the CISG." (emphasis
added)).  For simplicity's sake, in determining whether the parties agreed to paragraph 25 of
purchase order 55, the Court will refer to all parts of paragraph 25 as the "forum-selection
clause."

Belcher-Robinson *is* bound by those terms—but is the result of an analysis of the evidence currently in the record, viewed in the light most favorable to the plaintiff, and with all factual disputes resolved in the plaintiff's favor.

As Roctel points out, the contract between the parties could have been formed in two ways. First—and this is the way Roctel thinks it happened—purchase order 55 might have been an acceptance of an offer that took the form of Belcher-Robinson's price quote.[5] Second, purchase order 55 could have been the offer, which was accepted in Massachusetts by Belcher-Robinson.

The crux of the venue question, at least initially, is whether the parties agreed to the choice of law and jurisdiction provision such that the provision is binding on them, provided the plaintiff is not excused from enforcement for some other reason. As evidence that the parties assented to this term, Roctel offers the original and revised blanket purchase order 55, which contains the subject term. That purchase order contains instructions to reference PO# 22533 on all shipping documentation. To prove that Belcher-Robinson assented to the terms on the second page of the purchase order, Roctel offers the numerous invoices and packing lists that reference "Purchase Order 22533-Blank 55."

If the contract was formed in Ontario by the issuance of purchase order 55, which is what Roctel contends happened, it is an acceptance that contains an additional term (i.e., the forum-selection clause). The CISG treats additional terms differently depending on whether

---

[5] The price quote documentation is not currently in the record.

they materially alter the offer, but it does not clearly identify whether a forum-selection clause materially alters the offer.  Terms "relating . . . to" the "extent of one party's liability to the other or the settlement of disputes" do materially alter the terms of the offer.  CISG, art. 19(3).  The list of materially-altering terms given in the CISG is non-exclusive.  *See id.* (noting that, "among other things," the listed types of terms materially alter the offer).  The non-exclusive nature of the list and the reasonable argument that forum-selection clauses relate to the settlement of disputes indicate that a forum-selection clause would materially alter the offer under the CISG.  At least two United States federal courts have reached this conclusion.  *See Chateau Des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 531 (9th Cir. 2003) (classifying a forum-selection clause as relating to the settlement of disputes within the meaning of CISG art. 19(3)); *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 457–58 (D. Del. 2008) (agreeing with *Chateau Des Charmes Wines*).  However, because the Eleventh Circuit has yet to discuss this issue, the forum-selection clause will be evaluated as both a materially-altering and non-materially-altering term for the purpose of deciding the motion to dismiss.

A reply to an offer which contains additional terms that materially alter the offer constitutes a rejection and counteroffer rather than an acceptance.  *Id.*, art. 19.  In this scenario, the inclusion of the forum-selection clause in purchase order 55 materially altered the offer made by Belcher-Robinson.  Therefore, it constituted a rejection and a counteroffer, which Belcher-Robinson could either accept or reject.  In the affidavit of Richard Porter,

president of Belcher-Robinson at the relevant times, Porter expressly declares that Belcher-Robinson did not agree to, consent to, or acquiesce in the terms and conditions printed on purchase order 55 and did not enter into any forum-selection agreement.  The Court is compelled by the law of this Circuit to credit these assertions for purposes of this motion. Moreover, Porter claims to have actively objected to the forum-selection clause and to have communicated this objection to Roctel.  Again, for purposes of this motion, the Court must believe this testimony.  Additionally, Roctel has failed to produce conclusive evidence contrary to Porter's assertions.  Neither the original purchase order 55 nor the final revision provided to the Court[6] contain a signature in the place appointed for "Supplier Acknowledgment," as one would expect if these purchase orders are to support an inference that Belcher-Robinson assented to their terms.  When viewed in the light most favorable to Belcher-Robinson, these documents do not support the conclusion that Belcher-Robinson agreed to the forum-selection clause.  Therefore, under the standard for this motion to dismiss, Belcher-Robinson never agreed to Roctel's counteroffer, which included the forum-selection clause.

The other possibility is that a forum-selection clause does not materially alter the offer.  When a reply to an offer contains additions or modifications that do not materially alter the offer, the reply constitutes an acceptance, "*unless* the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect."  CISG, art. 19

---

[6] Roctel did not provide revisions one through five.

-14-

(emphasis added).  If the offeror does make timely objections, "the reply of the offeree is to be considered as a rejection of the offer rather than as an acceptance."   Secretariat Commentary, Aug. 29, 2006, http://cisgw3.law.pace.edu/cisg/text/secomm/secomm-19.html. As noted above, under the standard for evaluating this motion to dismiss, the Court must find that Belcher-Robinson timely objected to the forum-selection clause in the reply of the offeree.  Therefore, under the CISG purchase order 55 is to be considered a rejection of the offer rather than an acceptance.  Once again, under the standard for evaluating this motion to dismiss, the parties never agreed to the forum-selection clause.

If the contract was formed in Massachusetts,[7] purchase order 55 constitutes an offer rather than a purported acceptance.  In this scenario, Belcher-Robinson could either accept or reject that purchase order.  Once again, under the standard for evaluating this motion to dismiss, the Court must find that Belcher-Robinson rejected the offer made by purchase order 55.  In the alternative, Belcher-Robinson might have purported to accept the offer while proposing alterations, one of which would be the exclusion of the forum-selection clause. If the exclusion of the forum-selection clause were a material change, Belcher-Robinson's objections constitute a rejection and counteroffer.  CISG, art. 19.  If the exclusion of the forum-selection clause does not materially alter the purchase order, Belcher-Robinson's purported acceptance constitutes an acceptance, and the terms of the contract are—in the absence of objections by Roctel to Belcher-Robinson's objections—the terms of the purchase

_____

[7] Roctel admits this is a possibility, and the record is not sufficient to allow the Court to determine if the purchase order was an offer or purported acceptance.

order with the exclusion of the forum-selection clause.  CISG, art. 19(2).  There is no

evidence that Roctel made any modifications or objections to those objections made by

Belcher-Robinson.  Therefore, whether Belcher-Robinson's objections constitute a rejection

of the purchase order offer or a purported acceptance with modifications, the forum-selection

clause drops out.

In sum, the evidence submitted still leaves open several possibilities for how Belcher-

Robinson and Roctel formed a contract.  Construing the evidence presented in Belcher-

Robinson's favor, as the Court must under the standard for ruling on this motion to dismiss,

the Court finds that the forum-selection clause is not included under any of those

possibilities.  Therefore, the motion to dismiss is due to be denied on the grounds of the

forum-selection clause.

### B. Forum Non Conveniens

Under the doctrine of forum non conveniens, "when an alternative forum has

jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness

and vexation to a defendant out of all proportion to plaintiff's convenience, or when the

chosen forum is inappropriate because of considerations affecting the court's own

administrative and legal problems, the court may, in the exercise of its sound discretion,

dismiss the case." *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009)

(quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)).  A defendant invoking

forum non conveniens "bears a heavy burden in opposing the plaintiff's chosen forum."

*Wilson*, 590 F.3d at 1269 (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). A plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100–02 (11th Cir. 2004).

A court conducting an analysis of whether to dismiss a case pursuant to forum non conveniens must first consider private interest factors. *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009) (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)). Private factors the district court should consider when analyzing a forum non conveniens claim include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment. *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008). These factors are not exhaustive, and the district court should be flexible in applying them. *King*, 562 F.3d at 1381–82. "A trial court will look at the private interests first and then, if the balance of the private interests are found 'to be in equipoise or near equipoise,' it will 'determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum.'" *Id.* at 1382 (quoting *La Seguridad*, 707 F.2d at 1307). The Court therefore turns first to an analysis of the private interest factors.

Roctel argues that the private interest factors weigh in favor of resolving this dispute

in Ontario, Canada.  They point out that Belcher-Robinson's Alabama plant is no longer in

operation, and speculates that necessary business records are likely in Minnesota or

Massachusetts, while Roctel's documents are in Ontario, Canada.  Roctel also points out that

its witnesses are in Ontario, and courts there would likely be able to compel their testimony,

whereas this Court likely does not have jurisdiction to subpoena these witnesses.

Belcher-Robinson thinks the private interest factors, together with the strong

preference afforded to the plaintiff's chosen forum, defeat Roctel's arguments.  They claim

they do not require the testimony of witnesses in Ontario, and that Roctel can send these

employees to testify in their defense.  They also point to the easy transmissibility of

documents via e-mail, express delivery, or postal service.  Moreover, two of Belcher-

Robinson's witnesses and high-ranking employees reside in this district.

Considering the balance of these factors, together with the presumption in favor of the

plaintiff's chosen forum, the Court cannot say that trial of this case in the Middle District of

Alabama would be oppressive, vexatious, or out of all proportion to plaintiff's convenience.

Roctel's concerns about witness travel and document transfer are quite mild in the context

of a modern international business dispute and, in any event, would work in equal measure

to inconvenience Belcher-Robinson if this litigation took place in Ontario.  Moreover,

Belcher-Robinson has chosen this forum because it is a convenient one (its former principal

place of business and current location of at least two key witnesses), and the Court should

only disturb this choice if the balance strongly favors the defendant.  *Wilson*, 590 F.3d at

1270. In fact, the presumption in favor of a plaintiff's chosen forum is strongest in cases such as this one, where the plaintiff is a corporation of this country. *Id.*  The presumption is so strong that this Court must be "throughly convinced that material injustice is manifest" before denying an American Corporation access to its forum of choice. *Id.*  Because there is no injustice manifest, the presumption in favor of Belcher-Robinson's chosen forum cannot be upset, and the motion to dismiss is due to be denied insofar as it seeks dismissal based on forum non conveniens.[8]

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Roctel's Motion to Dismiss (Doc. #22) is DENIED.

DONE this the 31st day of March, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]Because of this finding regarding the private interest factors, the Court need not reach the weighing of the public interest factors.  *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008).